UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JERMAINE KEITH UPSHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00012-JPH-MKK |
| | ) | |
| S. LANTRIP Sgt., | ) | |
| PINKSTON Ofc., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jermaine Upshaw alleges in this civil rights action that two correctional officers used excessive force against him during an incident that occurred on August 29, 2021, at Wabash Valley Correctional Facility.

Defendants Steven Lantrip and Donald Pinkston have filed a motion for summary judgment. Dkt. [66]. For the reasons below, that motion is **granted**.

**I.**
**Standard of Review**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. In ruling on a motion for summary judgment, the

1

Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

## II. Procedural and Factual Background

### A. Procedural Background

Mr. Upshaw filed a pro se complaint on January 10, 2022. Dkt. 1. About a month later, he filed a motion to appoint counsel. Dkt. 8. The Court denied the motion, finding that the facts were within his knowledge, the claim was not legally complex, Mr. Upshaw had a GED, and he had been able to coherently explain his claims despite suffering from PTSD. Dkt. 20.

Mr. Upshaw filed a verified amended complaint on April 8, 2022. Dkt. 31.

The defendants filed their motion for summary judgment on February 21, 2023. Dkt. 66. Mr. Upshaw was released from incarceration on or around March 1, 2023, and he provided a notice of change of address on May 22, 2023. Dkts. 69, 70. Due to the timing of his release, the Court *sua sponte* ordered Defendants to resend Mr. Upshaw the motion for summary judgment and supporting materials and extended his deadline to respond to the motion. Dkt. 72.

Defendants filed a Notice of Service of Summary Judgment Materials on June 1, 2023. Dkt. 73. In the notice, Defendants stated that they re-served the Notice of Motion for Summary Judgment. *Id.* This notice includes copies of Federal Rule of Civil Procedure 56 and Local Rule 56-1, which explain the summary judgment process. Dkt. 68.

Mr. Upshaw filed his response on June 29, 2023. Dkt. 74. The response states, in its entirety, "Plaintiff, Jermain Upshaw, pro se, respectfully request[s] this motion not be dismissed due to (1) Steven Lantrip making numerous false statements about 8-29-21[;] (2) These significant differences need to be brought to trial, not dismissed." Dkt. 74. This response fails to comply with Local Rule 56-1, which requires that a party opposing summary judgment file a response brief, identify disputed facts, and support each fact with a citation to admissible evidence. S.D. Ind. L. R. 56-1(b), (e).

Mr. Upshaw was informed about the summary judgment process. He was no longer incarcerated, meaning he had a greater ability to seek counsel or work on his response on his own. He did not seek an extension of time or renew his request for counsel. Accordingly, consistent with Local Rule 56-1(h), the Court declines to *sua sponte* consider the verified amended complaint as evidence for purposes of summary judgment. *See McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 787 (7th Cir. 2019) (district judges may strictly enforce local summary-judgment rules). Accordingly, facts alleged in Defendants' motion for summary judgment are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L. R. 56-1(f).

3

## B. Factual Background

Consistent with the summary judgment standard and Local Rule 56-1, the Court treats Defendants' supported factual assertions as uncontested. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013).

On August 29, 2021, during recreation time for Mr. Upshaw's housing unit, a number of inmates congregated in the gym. Dkt. 66-2 at ¶¶ 7–8 (Decl. of Max Butler); dkt. 66-4 at ¶¶ 8–9 (Decl. of Steven Lantrip). At some point during recreation, a door alarm was tripped inside the weight room, which is within the gym. Dkt. 66-2 at ¶¶ 9–10.

Officer Butler, who was working inside the gym that day, left the equipment room to check on the alarm. *Id.* at ¶ 9. Officer Butler saw Mr. Upshaw running out of the weight room being pursued by approximately five other inmates. *Id.* at ¶ 10. After the inmates refused Officer Butler's command to stop, the inmates entered the dayroom of the gym. *Id.* at ¶ 11. In the dayroom, Mr. Upshaw picked up a plastic chair with metal legs. *Id.* at ¶ 12; dkt. 66-5 (photograph showing cafeteria-style chair). Officer Butler then called a signal 10, which means "officer needs assistance," over the facility radio, as the dayroom began to escalate into a chaotic environment. Dkt. 66-2 at ¶ 12. As inmates began to circle Mr. Upshaw, he began to swing the chair violently at them. *Id.* at ¶ 13. About ten inmates rushed upon Mr. Upshaw, disarmed him of the chair, and began to assault him. *Id.* at ¶¶ 13–14. The crowd grew, and suddenly about 20 inmates were attacking Mr. Upshaw and refusing Officer Butler's orders to disperse. *Id.* at ¶ 14.

Within about a minute of the signal 10 being called, Sergeant Lantrip and Sergeant Donaldson arrived in the gym, and soon after Officer Pinkston arrived. *Id.* at ¶ 15; dkt. 66-4 at ¶¶ 10–11; dkt. 66-3 at ¶¶ 7–8 (Decl. of Steven Donaldson). At that point, the scene was "very loud and chaotic" and "extremely tense." Dkt. 66-3 at ¶ 8; dkt. 66-4 at ¶ 11. There were about 80 inmates in the gym, and about 20 in the area near Mr. Upshaw. Dkt. 66-4 at ¶¶ 10, 12. Officer Butler and Sergeant Donaldson began ordering inmates to clear out and leave the gym, and Sergeant Lantrip moved through the crowd of inmates towards Mr. Upshaw. Dkt. 66-2 at ¶ 15; dkt. 66-4 at ¶¶ 10–11. Some inmates were complying, but others continued to remain in the immediate proximity of Mr. Upshaw. Dkt. 66-4 at ¶¶ 9–10.

Sergeant Lantrip approached Mr. Upshaw, who was on the floor partially under a card table in the dayroom. *Id.* at ¶ 12. As Sergeant Lantrip approached, Mr. Upshaw stood back up while clutching the chair, and he began to swing the chair at the nearby inmates. *Id.* at ¶ 13.

Sergeant Lantrip yelled at Mr. Upshaw to release the chair to avoid escalating the situation. *Id.* at ¶ 14. Sergeant Lantrip drew his taser and attempted to use an optional compliance technique in which he engaged a button on the taser which makes a loud electric-current noise. *Id.* at ¶ 15. This noise has at times had the effect of persuading inmates to comply with verbal orders without having to deploy the taser. *Id.* In addition, Sergeant Lantrip gave multiple verbal commands for Mr. Upshaw to put the chair down. *Id.* at ¶¶ 13–16; dkt. 66-2 at ¶¶ 16–17; dkt. 66-3 at ¶¶ 10-12; dkt. 66-4 at ¶ 12.

5

After Mr. Upshaw ignored repeated commands, Sergeant Lantrip deployed his taser to prevent further escalation of the situation. Dkt. 66-4 at ¶ 17. The taser struck Mr. Upshaw on his left-mid thigh, as well as his left-outer forearm, and was applied for approximately half of one second. *Id.* This brief application resulted in Mr. Upshaw releasing the chair and falling to the ground. *Id.* at ¶¶ 17–18; dkt. 66-15 (Stun Device/ Body Application Incident Report).

Within moments after the taser was deployed, Officer Pinkston approached Mr. Upshaw and placed mechanical restraints on his arms. Dkt. 66-1 at ¶ 14. No force was used or necessary to apply restraints, as Mr. Upshaw had become compliant after the taser was deployed. *Id.*

A wheelchair was then requested to take Mr. Upshaw to the medical station to treat a head laceration that Mr. Upshaw had received and to remove the taser barb. *Id.* at ¶ 15; dkts. 66-10 and 66-11 (photos of laceration). After being treated at the medical station, Mr. Upshaw was taken to a temporary housing unit. *Id.* at ¶¶ 16–17.

The application of the taser by Sergeant Lantrip was the only use of force by an officer that was observed by the officers present. Dkt. 66-3 at ¶¶ 16–17; dkt. 66-1 at ¶¶ 18–19; dkt. 66-2 at ¶ 17; dkt. 66-4 at ¶¶ 17–18.

### III.
### Discussion

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or

6

restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

> The ultimate determination of the intent of the person applying the force in an excessive force claim involving prison security measures depends upon a number of factors, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019) (internal citations omitted).

The Court proceeds to weigh the relevant factors.

***Need for the Application of Force and Extent of Threat to the Safety of Inmates and Staff.*** These factors weigh in favor of the defendants. The need for the use of force was high. This was an ongoing, chaotic situation. Nearly 20 inmates had been attacking Mr. Upshaw, and although most of the other inmates were in the process of dispersing, Mr. Upshaw continued to wave a chair around in a threatening manner. Dkt. 66-4 at ¶ 13. *See Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009) ("In many circumstances—often when faced with aggression, disruption, or physical threat—compelling compliance with an order is a valid penological justification for use of a taser.").

***Relationship Between the Need and Amount of Force Used and Extent of Injury.*** These factors also weigh in favor of Defendants. The undisputed evidence is that Sergeant Lantrip used a half-second burst of the taser, which caused Mr. Upshaw to release the chair and comply with the officers' orders.

Dkt. 66-4 at ¶¶ 17–18. *See Dye v. Lomen*, 40 F. App'x 993, 996 (7th Cir. 2002) (finding two to three second application of a stun gun was not excessive force when the plaintiff "was struggling with [the officers] and they needed to restrain him so that he would not injure them or himself"). No other force was used. Officer Pinkston placed mechanical restraints on Mr. Upshaw, but he did not need to use force to do so because at that point Mr. Upshaw was compliant. Dkt. 66-1 at ¶ 14. Finally, there is no evidence that either Sergeant Lantrip or Officer Pinkston inflicted Mr. Upshaw's head injury.

**Efforts to Temper Severity of the Use of Force.** This factor also weighs in favor of Defendants. Sergeant Lantrip repeatedly warned Mr. Upshaw to drop the chair, and he also used the compliance technique of engaging a button on the taser to make a loud electric-current noise as a final warning. Dkt. 66-4 at ¶¶ 14–16.

Having weighed the relevant factors, the Court concludes that summary judgment is warranted in Defendants' favor. The undisputed evidence shows that Sergeant Lantrip was justified in his single use of the taser, and Officer Pinkston used no force at all.

## IV.
## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is **granted**. Dkt [66].  Final judgment will issue by separate entry.

**SO ORDERED.**

Date:  9/22/2023

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JERMAINE KEITH UPSHAW
1826 E. 66th Street
Indianapolis, IN 47220

All Electronically Registered Counsel

9